Mr. Chief Justice, Your Honors, it is so pleased the lower court, as a matter of law, erred when it deemed that my client was not mentally fit to understand his rights when he was before P.E.B. and the B.C.M.R. My client, given the great weight of the evidence consisting of inconsistencies throughout the P.E.B. process and the concurring evidence in support of my client before the V.A., it's quite clear that my client was suffering from a mental impairment so severe as to inhibit his ability to understand his rights below. Mr. Eisenberg, I've seen this sort of issue many times. I've never seen a record where there was such great care taken to review and double review and consult with professionals and reconsult with professionals to ascertain the competence of your client. Do you feel that that procedure was inadequate? Not the procedure in of itself, but the conclusions from that procedure because of the inconsistencies within those procedures. Well, when you have multiple medical professionals and people who have worked extensively with your client making judgments, how does this court lay them aside just based on your apprehensions? Well, if I recall correctly from the record, those further medical conclusions were done much later. They didn't actually see my client versus the doctor, and you may forget her name, who did see my client, who initially diagnosed my client with major severe depressive disorder. But is depressive disorder or PTSD, even if we accept all of those findings, they're not the same as incompetence, are they? They're quite similar, and they do raise the question of whether or not my client was incompetent at the time because in her notes she says my client was not capable of handling his legal affairs on his own. He needed the assistance of his wife. How can you say the man was competent at that time? Did she say legal affairs, or did she say day-to-day business affairs? Forgive me, I forgot the exact quotation, but I believe they're one and the same. Business affairs, well, with business affairs you have legal connotations. Also, the culpability of understanding what it is that you do or don't need to do. It's clearly translatable. My understanding is that she said that Chief Stein is unable to function in many aspects of his life, that he remains capable of handling his own affairs partly due to him allowing his wife to manage him and his affairs daily. His capacity to make decisions at work is very questionable. That seems to me a slightly different posture than the one you're presenting. Respectfully, I disagree. If you have to do everything under the guidance of someone else because you're not competent to do it on your own, where he's always being shown not only also at work, but when he was doing his job for the military, there was questions of his competence to be able to do his job on his own. I think the quote was, though, he remains capable of handling his affairs under the guidance of his wife, partly. He goes on to say partly due to him allowing his wife to manage him and his affairs daily, which sounds more like a normal situation where someone is in need of some assistance, but not entirely. Sounds like me. I'm joking. No, no, I understand. Unacquainted. I'm also joking. In the opening clause of that sentence, that despite no history of incompetence or incapacity, what is the standard that we're supposed to apply for purposes of finding the ability or the competency to engage in a waiver? I mean, just like constantly you're determining if somebody is competent to stand trial. It doesn't mean that they don't have psychological problems. It means that they can't make real decisions. Well, forgive me. And again, I'm going to go, I mean, partly. Well, I think the whole thing has to hedge on the word of partly. Well, what parts of his decisions could he not do on his own without the help of his wife, without the help of someone assisting him? Which poses the question is then, well, what is he competent to do? And the board below never determined that. And I would submit until after it was remanded and they had someone do a record review. Meanwhile, we do have the VA evidence that gives that he was 70 percent disabled for the mental disability, PTSD, major depressive disorder, which they determined was two days. He was entitled to two days after he was let go, released from the military. He just didn't get hit by a bus and was suddenly profound to have PTSD. Obviously, it was something that was growing. And where everyone here is arguing, especially the opposing counsel, that we're believing, of course, that the military is going to be doing its job in good faith and correct in law. Well, the same deference needs to be given to the VA. Now, this was Dr. Stein, Dr. Smith we're talking about, and she released him into his own custody, right? That's correct. Again, her actions are inconsistent. And at that time, if you will, we were under the understanding that he is also, if you will, in the custody of his wife, in the care of his wife. I recognize that this isn't the easiest case. And I think I was before this panel a couple of weeks ago with regards to Scamillo. But in both cases, the military is relying on some evidence. They're not relying on the substantive evidence. And the reason why they're not relying on the substantive evidence is because when you take that one piece of evidence and forget how it interconnects with everything else that's going on, that piece of evidence isn't substantial or substantive. It's just some evidence. How do you deal with the other Veterans Administration doctor who said that the patient is competent based on the fact that he is non-psychotic and currently working? He's currently working, but if I recall correctly, he was having problems at work. I thought he got very good ratings for his work. And forgive me, I've forgotten that part of the record. I may, I'll have to defer to Your Honor, of course. But, I mean, ultimately, what was the job that he was doing? I'd have to question on that. I mean, if it's simply being a, with all due respect, a paper pusher versus, you know, making substantive legal decisions that requires questions of his care, I would then have to, again, raise the issue. If we find that he was competent to engage in a waiver, is that the end of it? Even if we would otherwise disagree with him? No, not at all. At the time, he was given bad legal advice. He was given bad legal advice by his JAG officer, JAG attorney, who suggested, look, you've got 10 percent, just run with it. That wasn't the case here. I mean... Well, it seems to me that's not all that the JAG officer said. It seems to me that there were other factors involved, that Mr. Stein was interested in continuing his military career in the reserves, as I understand it, and there was some concern about a higher disability rating that might impact that. Well, if there was a higher disability rating that might impact that, why didn't the board give him that higher disability rating? I mean, how is it that the board finds... Well, that's a different question. We're talking about competency of counsel, and you, you know, summarize the point by saying, well, he just got bad legal advice. It's a little too glib to say he just got bad legal advice. There were a lot of things that were discussed, were there not? A lot of things discussed with his counsel, and lots of factors presented that were considered. Now, you may conclude that this was bad legal advice, but it strikes me as being a little bit glib not to recognize that there were factors here that were presented to him and the factors that he considered in making this decision. But again, it all still boils down to what his JAG officer said to him, which was, take the 10% and run. I mean, I understand what you're saying, that there are other factors involved, but ultimately your argument... Maybe that was good advice, given the various options that he had and the various pros and cons, one way or the other, all of which, as I understand it, were presented to him. But then the question is, and I apologize, I realized I'm getting into my rebuttal time, but that's okay. But the question then becomes, who is the attorney really representing? This is a JAG attorney. Her responsibility is to the military. Military. Her responsibility to the military is just to advise this guy. But he's not the client. What's the legal relevance? So if she gave him bad advice, is it legally relevant because when you put that together with his mental state, it impacts whether or not the waiver was knowing and voluntary, or is there some actual right to the effective assistance of counsel in these circumstances? Well, then it is an issue of fraud because the attorney, the JAG officer, who is acting on behalf of not her client, the veteran, but the military, was giving him misleading advice. That the military said it was okay to do that, and that would be a wrongful discharge, would it not? Well, now you're going way overboard. You're saying that not only was she bad, but you're saying that she affirmatively talked him into this to mess him up? I'm saying she's following her orders, and I'll leave it at that. I mean, let's be blunt. We are aware of the GAO reports that say that the military is deliberately downsizing or downgrading the disability ratings. It's an issue of saving money. We're all in a financial crunch today and respect that, but it doesn't give the military, the government, or anyone to violate my client's rights. You're taught, it's ingrained in the military from day one, that you work for the military, the military will protect you, the military won't mislead you. But once you're hurt or once you've screwed up, they don't want to hear from you because you're a drain on the system, you're not contributing to the cause. Are there any more questions, Your Honor? Otherwise, I'd like to leave. Thank you, Mr. Reichenberg. Thank you. Mr. Grove? May it please the Court. This Court should affirm the decision of the Court of Federal Claims, which granted the government judgment on the administrative record. My argument today will address the four categories of evidence the Board considered, the appropriate standard the Board applied in determining that Mr. Stein was competent, and the significance of that finding of incompetence and his waiver of his right to a formal physical evaluation board. First, the Board relied upon inconsistencies in Mr. Stein's military medical records, which the Board determined reflected his tendency to tailor his reporting of his symptoms and medical history to his own benefit. On this point, I was kind of stunned by the whole conclusion that the 70% disability rating for psychological problems that the VA came up with was all based on subjective evidence or subjective recollections. I mean, that's what psychiatry is, is it not? No, it's not, Your Honor, and if I can, the Board's analysis was that his reporting of his symptoms and his medical history was unreliable, and that's based upon demonstrated inconsistencies in his previous reporting. But again, back to my original question. The Board said it was all subjective recollections. First of all, putting aside the fact that where he was and what he went through is all objectively provable, but psychiatry always depends on subjective analysis, but then you have an expert, a medical expert, who actually listened to those subjective recollections and made a medical determination, did they not? There was one based upon the symptoms. The VASAR requires a look at the individual's condition or, in the alternative, a look at his reported symptoms. What the Board determined here was a pattern of inconsistencies in his medical records demonstrated his proclivity to state his medical history and his symptoms in a manner that benefited him at a particular time. So the Board essentially made its own psychological determination? Absolutely not, Your Honor. What the Board determined here was there was a long pattern of misleading statements of symptoms and medical history, and that was reviewed by the Naval Council of Personnel Boards and their medical experts as well, who reached the same conclusion. So based upon information that the Veterans Administration didn't have, the Board essentially concluded there was an extensive pattern here of misreporting of medical history and symptoms. And on that basis, the Board determined that his complaints to the Veterans Administration and the Veterans Administration's subsequent diagnosis was subject to question. So the question meaning a difference between 70% and 10%? No, Your Honor, because... Or zero, actually. They gave him zero for his PTSD, right? Because they apparently don't believe that it happens? What the Board determined in this case was a demonstrated pattern of untruthfulness in reporting symptoms and medical history rendered his medical history suspect. I got that. So that was the end of the inquiry for his psychological analysis, right? No. The fact that he lied with respect to how much... The Board went much further, and as detailed in the analysis of the Navy Counselor Personnel Board's advisory opinion, the Board looked extensively at the VA records. The Board noted, in fact, that a VA clinical psychologist analyzing Mr. Stein's records concluded the possibility that his symptoms were not consistent with his functioning and that additional psychological testing... The phrase was used, the possibility that he was overstating his symptoms couldn't be ruled out and additional psychological testing might reveal that. There's no evidence in the existing record, which is not... We're frozen to the documents in the record now, whether or not that testing was done. So the Board had before it evidence from a VA clinical psychologist questioning the validity of the diagnosis. The Board had inconsistencies in its medical reporting. The Board also had in it the conflict between Mr. Stein's and then-Lieutenant Pintar's recollection of the counseling she provided. And the suggestion that Lieutenant Pintar, in some manner, was following orders and deliberately misadvised Mr. Stein is contradicted by the record. Moreover, the Court specifically, the Court below specifically, determined this issue was weighed. In footnote 27 of the Court's decision, the Court observed that in response to the Judge Advocate General investigation and to Mr. Stein's allegations of ineffective assistance in counsel, Mr. Stein did not raise that issue in the Court proceedings at all. And in fact, the record reflects he didn't respond to Lieutenant Pintar's statements made in the course of an investigation conducted by the Office of the Judge Advocate General at all in the correctional Board proceedings. So his present contentions and the suggestion that somehow Lieutenant Pintar deliberately misadvised him or fortunately advised him is made really for the first time in a reply brief and here at oral argument and was weighed by the failure to raise below under this Court's holding in Metz. It was weighed by the failure to raise the issue before the Court of Federal Claims, specifically noted by the Court in footnote 27, and was raised by his failure to raise this issue in his opening brief. And in fact, it was raised hinted at, if you would, for the first time in a reply brief filed with this Court. So is the Court of Federal Claims decision that he waived that argument and waived the right to seek review of that, does that end the inquiry? They didn't hold a waive. They mentioned in footnote 27 that it was never raised or argued before the Court of Federal Claims. It's our argument that by failing to raise it in the trial court, he should properly waive this Court's consideration of the issue. Now, the Board is assessing his capability to continue military employment. The Veterans Administration is assessing his ability to engage in civilian employment. How do we get a discrepancy of 10 to 100 percent? Actually, Your Honor, and we agree with the statement Mr. Stein makes at page 4. Civilian employment, is that much harder? Well, it's quite different, Your Honor. And the Court's decision at page 795, there's a long paragraph discussing discrepancies between the VA system and the Navy system, and we don't agree with that. And Mr. Stein raises this issue in his reply brief at page 4, footnote 3. And the disability system proceeds in this manner. Under the provisions of the Career Compensation Act of 1949, the military looks at the service member and determines those conditions which are unfitting. And then the military determines, assigns a disability rating for those conditions subject to the VASAR. There are certain very limited exceptions where they don't apply the VASAR in exactly the same manner as the Veterans Administration. Contrary to the thrust of this long paragraph that appears at the Court closed decision at 795, suggesting that it's somehow applied in a different manner, it's not. Generally speaking, the Navy and the VA apply the VASAR in a similar manner, as Mr. Stein argues in his reply brief. So applying it for different purposes is not enough to justify the disregard of the differential, is it? Yes, it is. I think it explains what happened in this case substantially. Because the Navy looked at the depressive disorder and analyzed the depressive disorder. And as the Council of Naval Personnel Advisory opinion relates, that Mr. Stein, notwithstanding the fact that we had a medical diagnosis and a medical board indicating that he was having problems in service, he was still able to perform substantially many of his military duties. So the military, if you would, took a snapshot of his condition, the Informal Physical Evaluation Board, and based upon the factors noted by the Naval Council of Personnel Boards in its advisory opinion to the BCNR, concluded that he was still functioning at a reasonably high level. The Correction Board and the Council of Naval Personnel Boards, in part disregarded substantially the medical opinion of Dr. Smith. Now, Dr. Smith, as the Board points out, Dr. Smith first determined that Mr. Stein was competent and then subsequently suggested in an unsigned letter provided to Mr. Stein that Mr. Stein, in fact, put into the record eventually considered by the Board. But you're not claiming that he forged that, are you? No, the government hasn't contested. But it apparently was intended as a draft he might use. It's unsigned at the time. So it may or may not reflect his opinion. The Board certainly suggested and the court below suggested that it was entitled to lesser weight. The court below noted as well, it's surprised that Dr. Smith would indicate in an earlier opinion that he was competent and then subsequently suggest that he was incompetent. But is that supposed to mean that we're supposed to assume it was forged or fake? They afforded it less weight. If Dr. Smith had intended this as a final medical opinion, presumably it would have been signed. But the Board's decision afforded it less weight. But the gravamen of the Board's decision was that the information Mr. Stein was providing for the purpose of diagnosis to medical professionals wasn't reliable. And that was based upon the numerous inconsistencies noted in his medical history provided the Navy at various points in time. This information wasn't available to the Veterans Administration when it made its determination. So what the Board was confronted with was a long history of prevarications regarding medical history. And on that basis they questioned the diagnosis. Evidence of depressive disorder and anxiety in both analyses and evidence of the hell he lived through in Honduras. And still we end up with the conclusion that there's no PTSD. Well, they indicated that PTSD is a strange diagnosis and that the DSM-IV criteria require actual threat of death to the individual or threat of death to those associated with him. I understand the definition of PTSD is broad enough to include possibly the circumstances described here. But the actual literal reading of the DSM-IV definition suggests a greater immediacy, if you would, of harm. So it doesn't squarely apply in this case. But that's not the way the medical community really applies it. In fact, that's what I'm saying. It is applied more broadly. It's true as to a lot of the DSM. But what would happen in this case, that issue was never reached because the informal Physical Evaluation Board made a determination that the unfitting condition here was a depressive disorder and not PTSD. The Board, the informal Board, had to make a determination that any condition that would be rateable by the Navy was permanent and may well have concluded that PTSD could be treated. In other words, what the Navy does at the time of discharge is looks at the service member, determines the existence of an unfitting condition, makes a determination whether that condition is permanent, and if it is, they rate it for a disability. On that basis, the Navy assigns either separation pay or permanent disability retired pay. They take a snapshot of the service member. It has to be permanent, and they do it. Subsequent deterioration of the service member under the statutory scheme is designed to be handled by the Veterans Administration. Do you want to respond to the statement that the Navy is going out of its way to reduce these percentages? I think that's outrageous. The suggestion that Lieutenant Pintar has deliberately engaged in some fraudulent conduct in this case is libelous. Lieutenant Pintar, only in response to a Judge Advocate General inquiry concerning her competency, responded in detail to the advice that she gave. That was after she signed waivers obtained by Mr. Stein, and she consulted with her Bar Counsel. Based on my inquiries to Lieutenant Pintar, she was reluctant to communicate with me, but although her Bar Counsel did indicate that communications would be appropriate if a formal inquiry were conducted and it did appropriate in the Civic Council. This issue was waived below. The Court below specifically noted that it wasn't even argued, and these suggestions that Lieutenant Pintar has engaged in improper conduct come first in the reply briefing here today at oral argument. It's outrageous. Putting Lieutenant Pintar aside about the allegation that we should put as an overlay to all this that there's an effort to knock these numbers down. I think that's completely incorrect. The Department of Defense is undergoing, in some cases, systematic review of military disability determinations, and in the case I argued yesterday, relief was granted. There's nothing in the record here to suggest that anything was improperly done to Mr. Stein. If anything, if you credit Lieutenant Pintar's statements made to the Office of the Judge Advocate General who conducted the inquiry, Mr. Stein made a very conscious decision to minimize the disability in the hope of reaffiliating with the Naval Reserve so he'd qualify for retirement in that manner. Turning to the question of what happens if you determine that he's competent, the Court below ignored this Court's holding in Gant. In Gant, the Court held that a service member waives a formal physical evaluation board. He waives both the determinations of fitness and the percentage of disability. That's exactly what happened in this case, and the reason for that holding and analysis is very clear, because if there's a formal physical evaluation board hearing, there'll be testimony and evidence as to an individual's employability and the conditions he suffers and how that should be properly rated. There'll be a complete record for the Court to review. Because Mr. Stein elected, having been consulted with counsel, to waive a formal hearing, that record simply doesn't exist. This case is a classic example of an individual after specifically waiving the procedure that might, if you would, answer the Court's questions and explain the basis for the diagnosis and the basis for the rating. He expressly waived the procedure that would have resulted in that determination and that record. So if there is waiver, is there a need to find substantial evidence? Well, there's a – if there – I see my time is almost up. Please answer. Please. The analysis has to be this. He can properly raise the question of waiver as to whether he waived a formal physical evaluation board. But if he does waive a formal physical evaluation board, the appropriate standard, I think, was first stated by the Court of Claims in Gowie. And that's a case, admittedly, discussing what constitutes a disability for the purpose of 2501. But the basic case is the individual has to be unaware of the circumstances and unaware of his need to follow legal – institute legal proceedings. That's not the case here. He was aware of the circumstances and was aware of the need to do it. Once you have the fact that the individual has that level of awareness, which we don't – we agree that he can contest that properly before the Court of Claims, but through the prism of the correction board, if he waives both consistent with this Court's holding in Gant, he waives any further judicial review of that determination. So you're disagreeing with the lower court's finding on that? Actually, the lower court found both. The lower court, relying on an earlier decision of this court that preceded Gant, held that he waived contesting the finding of PTSD, that he waived any contesting – waived any right to contest the court's specific findings, what constituted unfitting conditions. But he didn't waive the right to contest the percentage of disability determined. So the court below, if you would, applied half of the Gant holding. The Gant holding is that you can waive both. Right. There are other cases from this court that said that waiver of the IPEB does not constitute waiver of further judicial review. No, there's not, Your Honor. The Gant cites – I believe it's – it starts with H. It cited – it hurts cycling. It's cited in the decision below. But the Gant holds you – when you waive one, you waive both. And that is the most recent controlling decision on that issue. My time is up, Mr. Grove. Thank you. Mr. Eisenberg, you have a little more than two and a half minutes. Thank you, Your Honor. Your Honor, I need to briefly address a case that my opposing counsel brought up, which I believe is referring to the Dean v. U.S. case, which we both argued yesterday in a different panel. It's very important to note in that case that my client had to file suit, lose in the court of claims, and then appeal to this court, where two days prior to our argument, we've learned that, if you will, it appears sua sponte, the board has determined through a little bit of investigation that actually my client did have sleep apnea at the rating of 50 percent and was entitled to a military medical retirement versus a military medical discharge of 10 percent. So it's not that he was successful below. It was because apparently we ended up ringing some bells to put them on notice that, you know, hey, come on. Well, that hasn't happened here, so maybe we'd better come back to this case. Yes, sir. I just wanted to make sure there was some clarification on that. With regards to the, forgive me, the lack of giving notice of the, forgive me, improper counsel advice from below, EMICRA does not require us to have any particular incantation of words. Fair trial reflects that if the advice was clearly elonious and that the military could not show by substantial evidence that the plaintiff properly knew the consequences of the waiver, that my client, therefore, did not waive any rights because he did not do so knowingly and willingly. Earlier, a moment ago, opposing counsel mentioned something about how the board made a substantial decision not to use Dr. Smith's advice. Well, it's Dr. Smith's opinion that clearly shows that my client did have these problems. How do you respond to the absence of a signature? Why didn't you have her signed? Why didn't you have her sent? I was informed by my client literally two days ago, as he's been trying to contact Dr. Smith, that the military can't find her. They can't find her? Yes, ma'am, they have no address for her, which I find to be... Did you try Google? No, no, based on what limited information he has on her, simply put, we can't find her. And the military is supposed to keep records of all of this. Furthermore, the VA is supposed to have a copy of the military records when it's doing its diagnosis of veterans, including the alleged inconsistencies of my client. Now, these inconsistencies could easily be attributed to the PTSD. However, their doctors don't know that because they never actually interviewed him. Now, the inconsistencies predated, though, his return to the Navy. So you're saying that he had so much PTSD prior to going... I mean, I thought he was the second stint in the Navy. Right, he was the second stint. So I'm a little confused when they're talking about the inconsistencies from his first stint. And maybe I missed a nuance. Now, they're saying that his inconsistencies had to do with when he reapplied to go back in. Then why did they let him in? Because he lied, that's what they're saying. Because he lied? They didn't know about all this stuff. They say they wouldn't have let him in had they known. But it was the condition at the time that was caused by his service, the second time that created his PTSD, if I recall correctly. Thank you, Mr. Eisenberg. Thank you, Your Honor.